**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL FERRERAS, et al., | CIVIL ACTION NO. 16-2427 (JLL) |
| Plaintiffs, | **O P I N I O N** |
| v. | |
| AMERICAN AIRLINES, INC., | |
| Defendant. | |

**LINARES, District Judge**

## INTRODUCTION

This is an action brought pursuant to the Court's diversity jurisdiction against the defendant, American Airlines, Inc. (hereinafter, "American"), by several plaintiffs who are employees of American. See 28 U.S.C. § 1332. (See dkt. 1 (original Complaint); dkt. 24 (Amended Complaint).)[1]

The plaintiffs allege that American has violated the New Jersey Wage and Hour Law (hereinafter, "the NJWHL") by: (1) paying them a straight hourly wage for the hours they work in excess of 40 hours in a given week as a result of voluntary shift trades with other employees, rather than paying them at the overtime rate for those excess hours (hereinafter, "the Shift Trade Claim"); (2) requiring them to perform work before

---

[1] This Court will refer to documents by the docket entry numbers and the page numbers imposed by the Electronic Case Filing System.

clocking in, after clocking out, and during meal breaks without compensation (hereinafter, "the Uncompensated Time Claim"); and (3) configuring time clocks to round down and reduce the amount of time that the plaintiffs are credited with performing work (hereinafter, "the Rounding Down Claim"). (See dkt. 24.) The Court notes at the outset, insofar as the Shift Trade Claim is concerned, that the Amended Complaint does not contain an allegation that the plaintiffs were coerced into trading shifts. (See generally id.)

In addition to seeking to recover unpaid wages, the plaintiffs seek "liquidated damages, injunctive relief and punitive damages" in relation to all of their claims (hereinafter, "the Liquidated, Injunctive, and Punitive Claims"). (Id. at 21.)

American has filed a motion (hereinafter, "American's Motion") pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 56 for summary judgment in its favor and against the plaintiffs as to: (1) the Shift Trade Claim; and (2) the Liquidated, Injunctive, and Punitive Claims. (See dkt. 48 through dkt. 48-13; dkt. 51; dkt. 55; dkt. 70 through dkt. 70-8.) In addition, certain unions that represent American's employees (hereinafter, "the Unions") have filed separate motions for consideration by the Court of arguments that they raise in amicus curiae briefs in support of the part of American's Motion concerning the Shift Trade Claim (hereinafter, "the Unions' Amicus Motions"). (See dkt. 58; dkt. 58-1; dkt. 58-2; dkt. 61 through dkt. 61-4; dkt. 68; dkt. 69.)

In turn, the plaintiffs have filed: (1) a cross motion (hereinafter, "the Plaintiffs' Cross Motion") pursuant to Rule 56 for summary judgment in their favor and against the Airline as to the Shift Trade Claim; (2) opposition to the Unions' Amicus Motions; and

(3) purported opposition to the entirety of American's Motion, even though their papers lack any argument concerning the Liquidated, Injunctive, and Punitive Claims. (See dkt. 52; dkt. 63; dkt. 63-1; dkt. 64 through dkt. 64-7; dkt. 66.)

The Court resolves the Unions' Amicus Motions, American's Motion, and the Plaintiffs' Cross Motion upon a review of the papers and without oral argument. See L.Civ.R. 78.1(b). For the following reasons, the Court grants the Unions' Amicus Motions, grants American's Motion, and denies the Plaintiffs' Cross Motion.

## BACKGROUND

The Court presumes that the parties are familiar with the factual context and the procedural history of the action, and the Court will not repeat the contents of the Introduction section of this Opinion. Thus, the Court will only set forth a brief summary here.

### I. The Authority of the New Jersey Commissioner of Labor and Workforce Development

The New Jersey Commissioner of Labor and Workforce Development (hereinafter, "the Commissioner") is authorized to promulgate regulations in the New Jersey Administrative Code to complement the NJWHL, including regulations that address overtime pay. See N.J.S.A. § 34:1A-3; N.J.S.A. § 34:11-4.11; N.J.S.A. § 34:11-56a et seq.

### II. New Jersey Administrative Code § 12:56-15.3

The New Jersey Administrative Code contains a subchapter that specifically requires airlines to pay overtime wages to their employees for hours that they work in excess of 40 hours in a week:

*except* rescheduled time off for overtime shall be permitted to air carrier employees where:

    1.    The employee so requests;

    2.    The employer determines that the workload demands permit the employee's absence; or

    3.    The rescheduled time off is taken within specified periods.

N.J.A.C. § 12:56-15.3(a) (entitled "Overtime rates") (emphasis added); see N.J.S.A. § 12:56-15.1 (entitled "Definitions," and defining "air carrier employer" and "air carrier employee"); see also N.J.A.C. Subch. 15 (entitled "Employment in Air Carrier Industry").

Thus, Section 12:56-15.3 permits the employees of airlines to trade shifts in order to deal with personal matters, and also permits the airlines to accommodate those employees in scheduling shifts while legally paying straight time for the hours worked in excess of 40 hours due to shift trades requested by those employees. However, Section 12:56-15.3 still protects those employees by requiring the airlines to pay the overtime rate for hours worked in excess of 40 hours if those excess hours are not the result of an employee's request to trade shifts.

The Court notes that Section 12:56-15.3 is far more favorable to the employees of airlines than the Fair Labor Standards Act (hereinafter, "the FLSA"), which completely exempts airlines from being required to pay overtime wages to their employees, even if

those employees work in excess of 40 hours under any circumstance. See 29 U.S.C. § 213(b)(3).[2]

## III. American's Motion, The Unions' Amicus Motions, and The Plaintiffs' Opposition and Cross Motion

### A. American's Motion

American argues that shift trading is a privilege that the Unions — who represent the interests of American's employees — have long bargained for. Furthermore, American argues that the Commissioner has previously confirmed in correspondence in a different matter that the practice of not paying overtime wages for hours worked in excess of 40 hours due to voluntary shift trades in the airline industry is a permissible practice under Section 12:56-15.3. (See dkt. 48-5.) Thus, American argues that it is entitled to summary judgment as to the Shift Trade Claim.

American also argues that the Liquidated, Injunctive, and Punitive Claims are explicitly barred by the terms of the NJWHL. Thus, American argues that it is also entitled to summary judgment as to those claims.

### B. The Unions' Amicus Motions

The Unions support American's argument concerning the Shift Trading Claim.

---

[2] American refers to Section 12:56-15.3 as the "Air Carrier Exemption" throughout its papers. The Court has refrained from using that phrase, because that phrase is never used in the regulation itself. Furthermore, in contrast to the FLSA, the regulation does not set forth a blanket bar to the payment of overtime to the employees of airlines, and thus it is incorrect to characterize the regulation as setting forth an *exemption*. Rather, Section 12:56-15.3 sets forth a limited *exception* to the payment of overtime wages to the employees of airlines.

The Unions confirm that the option of trading shifts on short notice "is an extremely valuable benefit," and that their "members greatly value the ability to shift swap and take no issue with the fact that they are paid straight time rates, even if it results in working more than 40 hours in a week." (Dkt. 58 at 7–8; see dkt. 61-3 at 7 (arguing that the practice of shift trading "is an important quality of life benefit for union-represented employees").)

### C. The Plaintiffs' Opposition to American's Motion and the Plaintiffs' Cross Motion

The plaintiffs urge the Court to invalidate Section 12:56-15.3 for being contrary to the intent of the NJWHL, and for constituting an overreach by the Commissioner, "because it flies in the face of the humanitarian and remedial nature of the New Jersey wage and hour law." (See dkt. 64-4 at 15.) In support of this argument, the plaintiffs rely on Keeley v. Loomis Fargo & Co., 183 F.3d 257 (3d Cir. 1999), wherein the Third Circuit Court of Appeals struck down a regulation promulgated by the Commissioner that extinguished the requirement to pay overtime wages to those employed in the trucking industry for being in contravention of the NJWHL.

The plaintiffs also argue that if the Court is not inclined to strike down Section 12:56-15.3, then the Court should deny American's Motion insofar as it concerns the Shift Trade Claim, and that the Court should allow them to conduct further discovery in order to determine whether the shift trades were indeed voluntary. The plaintiffs also urge the Court to disregard the arguments raised by the Unions.

The Court has carefully reviewed all of the plaintiffs' submissions, and finds that the plaintiffs have failed to raise any arguments in opposition to the part of American's Motion seeking summary judgment as to the Liquidated, Injunctive, and Punitive Claims in their papers.

## DISCUSSION

### I. The Unions' Amicus Motions

Before addressing American's Motion and the Plaintiffs' Cross Motion, the Court addresses the Unions' Amicus Motions.

The Court possesses the authority to consider the arguments raised by the Unions in their amicus curiae briefs. See Neonatology Assocs., P.A. v. Comm'r of Internal Revenue, 293 F.3d 128, 132 (3d Cir. 2002) (holding that an amicus brief may provide assistance to a court by contributing background or factual references that merit consideration, or by explaining the impact that a potential holding might have on an industry or other group, even when the parties to an action are properly represented). Furthermore, even though each Union by its very nature is an "advocate," the Unions are not barred from seeking to make a "responsible presentation" in support of American's Motion here. Id. at 131. Also, the plaintiffs will not be prejudiced if the Unions' Amicus Motions are granted, because the Court is more than able to "simply disregard" the arguments raised by the Unions in their amicus briefs if they "turn[] out to be unhelpful." Id. at 133.

Therefore, the Court exercises its discretion to grant the Unions' Amicus Motions and to consider the arguments raised by the Unions in their briefs.

## II. American's Motion and the Plaintiffs' Cross Motion

### A. Summary Judgment Standard

It is not necessary for the Court to restate the standard for resolving a motion for summary judgment made pursuant to Rule 56, because that standard has been already enunciated. See Fed.R.Civ.P. 56(a) (providing for an award of summary judgment if there is no genuine dispute of material fact and the movant is entitled to judgment as matter of law); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (setting forth the standard); United States ex rel. Kosenke v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (setting forth the standard).

Furthermore, the summary judgment standard is not affected when the parties file cross motions for summary judgment. See Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998); Appelmans v. City of Philadelphia, 826 F.2d 214, 216 (3d Cir. 1987).

### B. The Liquidated, Injunctive, and Punitive Claims

The plaintiffs have not raised any arguments in opposition to the part of American's Motion seeking summary judgment in its favor as to the Liquidated, Injunctive, and Punitive Claims. Thus, the "plaintiffs appear to have abandoned th[ose] claim[s], as they have failed to offer any argument or evidence on th[ose] claim[s] in opposition to [American's] motion for summary judgment." Curtis v. Treloar, No. 96-1239, 1998 WL 1110448, at *9 (D.N.J. Aug. 27, 1998), aff'd, 189 F.3d 463 (3d Cir. 1999) (table decision). However, the plaintiffs did not explicitly advise the Court that they have abandoned the Liquidated, Injunctive, and Punitive Claims, and thus the Court cannot hold that American is automatically entitled to summary judgment on those claims

simply because the plaintiffs did not oppose that part of American's Motion. See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). Instead, this Court may grant this relief only if American is entitled to judgment as a matter of law. See id.; Kadetsky v. Egg Harbor Twp. Bd. of Educ., 164 F.Supp.2d 425, 431 (D.N.J. 2001) (stating that if the opponent to a summary judgment motion fails to oppose an argument made in support of summary judgment by written objection, memorandum, affidavits, or other evidence, then all material facts set forth by the movant with appropriate support will be accepted as true).

The Court finds that American is entitled to summary judgment in its favor and against the plaintiffs on the Liquidated, Injunctive, and Punitive Claims. It is now well-settled law that the relief available for a cause of action concerning an alleged failure to pay overtime wages pursuant to the NJWHL is limited to unpaid wages, costs, and reasonable attorneys' fees, and that the NJWHL does not provide for liquidated damages, injunctive relief, or punitive damages. See Thompson v. Real Estate Mortg. Network, Inc., 106 F.Supp.3d 486, 489–92 (D.N.J. 2015); Garcia v. Freedom Mortg. Corp., 274 F.R.D. 513, 517 n.4 (D.N.J. 2011); Pridgen v. RAB Comm'cns, Inc., No. 11-2255, 2011 WL 5920932, at *4 (D.N.J. Nov. 28, 2011); Merlo v. Fed. Express Corp., No. 07-4311, 2010 WL 2326577, at *10 (D.N.J. May 7, 2010); Novak v. Home Depot U.S.A., Inc., 259 F.R.D. 106, 117 (D.N.J. 2009); Kronick v. Bebe Stores, Inc., No. 07-4514, 2008 WL 4509610, at *7 (D.N.J. Sept. 29, 2008); see also N.J.S.A. § 34:11-56a25 (a provision of the NJWHL stating that an employee may recover unpaid wages, costs, and attorneys' fees in a civil action brought against an employer).

Therefore, the Court grants the part of American's Motion that seeks summary judgment in its favor as to the Liquidated, Injunctive, and Punitive Claims.

### C. The Shift Trade Claim

The Court holds that American has demonstrated its prima facie entitlement to judgment as a matter of law on the Shift Trade Claim. First, the Commissioner possessed the authority in general to promulgate Section 12:56-15.3. See N.J.S.A. § 34:1A-3; N.J.S.A. § 34:11-4.11; N.J.S.A. § 34:11-56a et seq. Second, Section 12:56-15.3 on its face does not completely exempt an airline such as American from paying overtime wages to its employees. Rather, Section 12:56-15.3 merely extends flexibility to the airlines and their employees to engage in a system of trading shifts that mutually benefits the personal lives of the employees and the staffing requirements of airlines that are operating a 24-hour business, and thus Section 12:56-15.3 does not run contrary to the requirements of the NJWHL. Third, the Court finds it persuasive that the Unions — which function as advocates on behalf of the employees of airlines — support American's position.[3]

The plaintiffs argue that the Court should invalidate Section 12:56-15.3 as being in contravention to the general overtime requirements set forth in the NJWHL. In support, the plaintiffs rely on the aforementioned holding of Keeley v. Loomis Fargo & Co., 183

---

[3] It also appears that the system of permitting voluntary shift trades in place of overtime payments set forth under Section 12:56-15.3 is a generally accepted practice in the airline industry in New Jersey. See 3 Employment Coordinator Compensation § 21:122 (Clark Boardman Callaghan 2017) (stating that under New Jersey law, airline employees may receive rescheduled time off in lieu of receiving overtime pay for time worked in excess of 40 hours per week if they so request).

F.3d 257 (3d Cir. 1999), wherein the Third Circuit Court of Appeals struck down a regulation promulgated by the Commissioner that extinguished the requirement to pay overtime wages to those employed in the trucking industry for being in contravention of the NJWHL.

However, the holding in Keeley is distinguishable from the instant case. Section 12:56-15.3 merely provides an exception to the NJWHL's overtime requirements in certain situations that are beneficial to airline employees and that are purely voluntary, whereas the regulation at issue in Keeley set forth a complete exemption from the payment of overtime wages that applied to all employees involved in the trucking industry in all situations and, thus, ran contrary to the spirit of the NJWHL. See 183 F.3d at 263–64; id. at 273. Indeed, the Third Circuit Court of Appeals derisively referred to that trucking industry overtime regulation as "not a mere modification of the statutory overtime rate, but . . . largely a nullification of that statutory requirement." Id. at 266 n.6.

In addition, the Third Circuit Court of Appeals actually acknowledged Section 12:56-15.3 as an example of an overtime regulation promulgated by the Commissioner that did not appear to be in contravention of the NJWHL, because it "allow[s] the use of compensatory time off instead of overtime pay for air carrier employees, in certain circumstances," and it does not comprise a blanket exemption to overtime wages. See Keeley, 183 F.3d at 263 & n.4 (holding that Section 12:56-15.3 covers air carrier employees, provides that those employees must be paid overtime "with certain adjustments relevant to [the] industr[y]," and cannot be construed to "exempt employees from the [NJWHL's] overtime or minimum wage provisions"). Thus, the plaintiffs'

reliance on the holding in Keeley is misplaced.

Furthermore, the plaintiffs raise a novel argument in opposition to American's Motion: that further discovery may reveal that the system of trading shifts was not entirely voluntary. However, the Plaintiffs' Amended Complaint contains no allegations whatsoever that their conduct in trading shifts was anything other than voluntary. In fact, the Amended Complaint characterizes the "policy [of] allowing full- and part-time Employees the ability to take time off to deal with emergencies or other personal issues" as a "benefit". (See dkt. 24 at 13.) Thus, the Court rejects the plaintiffs' assertion here, because the plaintiffs "may not amend a complaint by raising arguments for the first time in a brief in opposition to a motion for summary judgment." Warfield v. SEPTA, 460 Fed.Appx. 127, 132 (3d Cir. 2012); see Bell v. City of Philadelphia, 275 Fed.Appx. 157, 160 (3d Cir. 2008) (stating the same). Therefore, the Court finds that the plaintiffs' argument here is based on mere speculation and conjecture, and that it cannot withstand summary judgment. See Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (holding that a party opposing summary judgment may not rest upon mere allegations or denials, and that the party must set forth specific facts showing that there is a genuine issue for trial in response).[4]

---

[4] The plaintiffs have submitted a copy of email correspondence between the plaintiffs' counsel and an official with the New Jersey Department of Labor and Workforce Development that the plaintiffs argue supports their position that they were entitled to be paid overtime wages when trading shifts. (See dkt. 64-4 at 9.) However, that official has disavowed his statements from that email correspondence as being presented out of context by the plaintiffs in their papers. (See dkt. 70-7.) Thus, the Court finds that the aforementioned copy of email correspondence raises no triable issue of fact.

Therefore, the Court grants the part of American's Motion that seeks summary judgment as to the Shift Trade Claim, and denies the Plaintiffs' Cross Motion.

## CONCLUSION

For the aforementioned reasons, the Court: (1) grants the Unions' Amicus Motions; (2) grants American's Motion; (3) denies the Plaintiffs' Cross Motion; and (4) enters summary judgment in favor of American and against the plaintiffs as to the Shift Trade Claim and all of the Liquidated, Injunctive, and Punitive Claims. The Uncompensated Time Claim and the Rounding Down Claim remain viable at this juncture.

The Court will enter an appropriate order.

JOSE L. LINARES
United States District Judge

**Dated:** March 27th, 2017