NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL FERRERAS, *et al.*, | CIVIL ACTION NO. 16-2427 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| AMERICAN AIRLINES, INC., | |
| Defendant. | |

**LINARES**, Chief District Judge

This is a putative class action brought by the named employee plaintiffs against the defendant employer, American Airlines, Inc. (hereinafter, "American"). Pending before the Court is the motion by the named plaintiffs pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 23(a) and Rule 23(b)(3) to certify three subclasses compromised of current and former hourly-paid and non-exempt hourly American employees who worked at Newark Liberty International Airport at any time from April 29, 2014 through the present, who were allegedly denied compensation for work performed: (1) before and after their scheduled shifts while on the clock; (2) during their unpaid meal periods; and (3) before clocking in for their scheduled shifts, and after clocking out for their scheduled shifts. (ECF Nos. 104 through 104-21, and 110.) American opposes the motion to certify. (ECF Nos. 105 through 105-17.)

Also pending before the Court is American's cross-motion pursuant to Rule 56 for summary judgment in its favor as to the claims asserted by the named plaintiff Edwin Gonzalez alone. (ECF Nos. 108 through 108-9, 116 through 116-2, and 117.) The plaintiffs oppose American's cross-motion for summary judgment. (ECF Nos. 114 through 114-15.)

The Court will resolve the motion to certify and the cross-motion for summary judgment upon a review of the papers and without oral argument. *See* L. Civ. R. 78.1(b). For the following reasons, the Court: (1) grants the plaintiffs' motion for class certification; and (2) denies American's cross-motion for summary judgment without prejudice.[1]

## BACKGROUND

American has a timekeeping system that records the hours that its employees work and links those hours to their pay. The system automatically pays the employees for their scheduled shifts if they are clocked in, and accounts for a thirty-minute meal break for full-time shifts. The system also has pre-programmed "grace periods," where an employee may clock into the system before a shift starts, and may stay after the shift ends before clocking out. (ECF No. 105 at 10.)

---

[1] The Court previously granted summary judgment in American's favor as to the plaintiffs' claims concerning: (1) American's alleged failure to pay overtime wages to its employees for the hours worked in excess of 40 hours in a given week as a result of voluntary shift trades with other employees (hereinafter, "the Shift Trade Claim"); (2) liquidated damages; (3) injunctive relief; and (4) punitive damages. (ECF Nos. 71 & 72.) The Court also previously denied the plaintiffs' motion for permission to file an immediate appeal from the Court's determination concerning the Shift Trade Claim. (ECF No. 81.)

The plaintiffs allege that American, as a matter of company policy, regularly violates the New Jersey Wage and Hour Law (hereinafter, "the NJWHL") by denying them compensation for work performed: (1) before and after their scheduled shifts, even if they clock in early or clock out late to finish their work; (2) during their unpaid meal periods; and (3) before clocking in for their shifts, and after clocking out for their shifts. (*Id.*)[2] The named plaintiffs are all employed by American at Newark Liberty International Airport as hourly-paid: (1) Fleet Service Clerks, who load bags and freight into airplanes, unload the same off of airplanes, operate towlines to pull aircraft into and out of hangars, and assist with water and lavatory services; or (2) Aircraft Maintenance Technicians, who perform repairs and service updates on aircraft systems. (ECF No. 24.)

The named plaintiffs are as follows:

- Daniel Ferreras, who works as a full-time Fleet Service Clerk, was hired in December 2008, and is paid $20 an hour;

- Edwin Gonzalez, who works as a part-time Fleet Service Clerk, was hired on January 12, 2015, and is paid $11.69 an hour;

- Doug Billitz, who works as a full-time Aircraft Maintenance Technician, was hired in July 1989, and is paid $38 an hour;

- Scott Ellentuck, who works as a full-time Aircraft Maintenance Technician, was hired in October 1991, and is paid $38 an hour;

---

[2] In contrast to the NJWHL, the Fair Labor Standards Act completely exempts airlines from being required to pay overtime wages to their employees, even if those employees work in excess of 40 hours under any circumstance. *See* 29 U.S.C. § 213(b)(3).

- Denis Lippens, who works as a full-time Aircraft Maintenance Technician, was hired in August 1985, and is paid $40 an hour;

- Rueben Ramirez, who works as a full-time Aircraft Maintenance Technician, was hired in June 1997, and is paid $38 an hour;

- Masoud Zabihialam, who works as a full-time Aircraft Maintenance Technician, was hired in July 1991, and is paid $41 an hour;

- Christopher Faust, who works as a full-time Aircraft Maintenance Technician, was hired in October 1988, and is paid $38 an hour; and

- Ramon Coca, who works as a full-time Aircraft Maintenance Technician, was hired in May 1989, and is paid $38 an hour.

## LEGAL STANDARD FOR CLASS CERTIFICATION

A motion for class certification may be granted if the prerequisites of Rule 23 have been met, *i.e.*: (1) the four requirements under Rule 23(a) of numerosity, commonality, typicality, and adequacy; and (2) the pleading requirements under Rule 23(b)(1), Rule 23(b)(2), or Rule 23(b)(3). *See* Fed. R. Civ. P. 23; *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008). Rule 23 certification also involves an ascertainability inquiry, wherein it must be shown that: (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). If there is any doubt as to whether

any of the Rule 23 requirements have been met, then certification should be denied, regardless of the area of substantive law. *See Hydrogen Peroxide*, 552 F.3d at 321.

To satisfy Rule 23(b)(3) — under which the plaintiffs seek to proceed here — there must be a finding "that the questions of law or fact common to the class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added); *see also Hydrogen Peroxide*, 552 F.3d at 310 (discussing the concepts of predominance and superiority). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Hydrogen Peroxide*, 552 F.3d at 311 (quotation marks and citation omitted). As a result, in addition to the four requirements of Rule 23(a), common issues of fact and law must predominate, and a class action must be superior.

On a motion for class certification, "Plaintiffs are not required to conclusively demonstrate the merit of their claims in order to obtain certification as a class." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009). Instead, "they must show that the elements of those claims are capable of proof at trial through evidence that is common to the class rather than individual to its members." *Id.* (quotation marks and citation omitted).

# CLASS ACTION ANALYSIS

## I. Numerosity

Rule 23(a) requires a finding that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement promotes judicial economy by eliminating the need to separately adjudicate many actions that are similar in nature. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012). Furthermore, this requirement enhances access to judicial relief, particularly when individual claims would not be economical to litigate individually, and prevents putative class representatives and counsel from depriving members of a small class from adjudicating their claims individually. *Id.* at 594–95. As a general rule, a potential class with at least forty members may meet the numerosity requirement. *See id.* at 595.

American does not contest the numerosity requirement in this action. (*See generally* ECF No. 105 at 1–36.) In any event, the plaintiffs have identified approximately 200 class members so far, and have identified at least 40 members of each subclass. (*See* ECF No. 104-1 at 8–9, 25.) Thus, the plaintiffs have satisfied the numerosity requirement.

## II. Typicality

Rule 23(a) requires a finding that the claims or defenses of the named plaintiffs are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential*

*Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998). The typicality element, rather than requiring that the putative class members have claims that are identical to each other, functions to ensure that the putative class members will be adequately represented. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531–32 (3d Cir. 2004). Typicality may lie when the claims of the class representatives and of the class members arise from the same alleged course of conduct on the part of a defendant. *See Baby Neal, for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

American does not contest the typicality requirement in this action. (*See generally* ECF No. 105 at 1–36.) In any event, each member of the proposed subclasses were subject to the same overall timekeeping system. (ECF No. 104-1 at 9–10.) All putative members of Subclass 1 were allegedly not paid for work done while clocked in if they worked before and after their scheduled shift times. All putative members of Subclass 2 were allegedly subject to American's systematic policy of failing to pay employees for work performed during meal periods. All putative members of Subclass 3 were allegedly subject to American's uniform policy of not paying employees for work performed before clocking in and after clocking out. Thus, the claims all rely upon the singular issue of whether American is violating the NJWHL by failing to pay its employees for time worked beyond their scheduled hours. (*See* ECF No. 104-1 at 33.) Furthermore, all putative class members will be subject to the same defense to be presented by American, *i.e.*, that American has a procedure in place whereby employees may request on certain forms to be compensated for any additional hours that they work, and that American does not deny compensation for the

additional time worked as a matter of company policy. Thus, the plaintiffs have satisfied the typicality requirement.

### III. Commonality and predominance

The Court may jointly apply the commonality requirement set forth in Rule 23(a)(2) and the predominance requirement set forth in Rule 23(b)(3). As set forth by the Third Circuit Court of Appeals:

> Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other. Rule 23(b)(3)'s predominance element in turn requires that common issues predominate over issues affecting only individual class members. . . . [T]he Rule 23(b)(3) predominance requirement, which is far more demanding, incorporates the Rule 23(a) commonality requirement. Accordingly, we analyze the two factors together, with particular focus on the predominance requirement.

*See Warfarin Sodium*, 391 F.3d at 527–28 (citations omitted).

In addressing the predominance requirement, the Court must determine whether the questions of law or fact that are common to the members of the putative class predominate over any questions affecting only individual members, and that a class action would be superior to other available methods for the fair and efficient adjudication of the controversy. *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 308 (3d Cir. 2005). Thus, "[t]he predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Id.* at 308–09.

The plaintiffs have satisfied the commonality and predominance requirements here

by setting forth allegations and initial evidence that hourly-paid American employees at Newark Liberty International Airport are not being compensated for all hours worked due to the manner in which American operates its timekeeping system. The issue that predominates over all of the Subclasses is whether American is violating the NJWHL by imposing a schedule-based compensation system that in theory permits a supervisor to authorize compensation for work performed outside of a scheduled shift, but in practice discourages employees from seeking such authorization when they actually work additional hours, and thereby deprives American's employees of the extra compensation that they have earned. (*See* ECF No. 104-5 at 35–39, 42–43, 46 (an American manager testifying in a deposition that American's timekeeping system only pays employees for time within the confines of scheduled shifts).) Indeed, the named plaintiffs Billitz, Ellentuck, Lippens, Ramirez, Zabihialam, Coca, and Faust testified in their respective depositions that many employees simply gave up requesting to be compensated for the extra time that they worked after numerous requests had been denied by those in management. (*See* ECF No. 104-11 at 61–62, 123–24; ECF No. 104-12 at 170, 174–83; ECF No. 104-13 at 43–55, 170–74; ECF No. 104-14 at 57–66, 71–72, 175–83; ECF No. 104-15 at 38–46, 143–45; ECF No. 104-16 at 42–44, 108–15, 176–85; ECF No. 104-17 at 70–73, 141–43.)

Furthermore, the named plaintiffs Ferreras, Gonzalez, Billitz, Ellentuck, Lippens, Ramirez, Zabihialam, Coca, and Faust testified in their respective depositions that: (1) all employees were required on a regular basis by managers to arrive early and stay late to finish their work due to a shortage of labor, to attend meetings, and to complete training

requirements; (2) American's timekeeping system defaulted to pay employees based only on the scheduled hours; and (3) the amount of time for which employees performed work beyond their normal schedules and during meal periods ranges from one to four hours of uncompensated time each week. (*See* ECF No. 104-9 at 34–36; 42–43, 50–52, 175–79; 192–94; ECF No. 104-10 at 34–37, 43–49, 87–88; 128–29, 133–34; ECF No. 104-11 at 35–38, 44–49, 61–66, 128–33; 136–37; ECF No. 104-12 at 112–13; 158–59, 166–86; ECF No. 104-13 at 43–55, 61–62, 68–73, 84, 99–100, 170–74, 181; ECF No. 104-14 at 57–66, 70–72, 75–82, 172–79, 182–87; ECF No. 104-15 at 38–46, 50–57, 60–62; 143–45; ECF No. 104-16 at 42–44, 52–53, 109–16; 174–85, 190–91; ECF No. 104-17 at 66–73, 79, 141–43, 167–68, 172–73, 178–80; *see also* ECF No. 104-18 at 1 (a chart reflecting the hours worked by Ferreras from April 29, 2014 through May 18, 2014, and that he was only paid according to his scheduled shift time); ECF No. 104-19 at 1 (chart reflecting the hours worked by Lippens from May 28, 2014 through June 26, 2014, and that he was only paid according to his scheduled shift time). This evidence is sufficient for certification of this action as a class action at this juncture. *See Galt v. Eagleville Hosp.*, 238 F. Supp. 3d 733, 737–38 (E.D. Pa. 2017) (conditionally certifying a class action where the three plaintiffs declared that the defendant employer deprived different types of employees of their compensation for work performed during their scheduled meal breaks, and that the employer's argument that employees were encouraged to take their meal breaks did not provide a basis to deny certification and was more appropriate for decertification or summary judgment); *cf. Armstrong v. Weichert Realtors*, No. 05-3120, 2006 WL 1455781, at *1–2 (D.N.J. May 19,

2006) (denying a motion to certify a class action on behalf of all loan officers employed by the defendant, as the plaintiff failed to put forth a basis for his generalized allegation that all loan officers were required to work unpaid hours, and that he showed at best that only he was compelled by the defendant to work unpaid hours).

American argues that the plaintiffs' claims cannot be resolved on a class-wide basis because employees would clock in early or clock out late for personal reasons, and spend this time engaged in personal activities, such as socializing, drinking coffee, watching television, or reading. (ECF No. 105 at 7.) Furthermore, American argues that the putative class members worked different shifts that entailed different responsibilities. (*Id.* at 23.) However, whether American's hourly-paid employees engage in personal activities, rather than work-related activities, during the time periods raised by the plaintiffs is to be addressed during discovery, and does not merit a denial of class certification at this juncture, particularly since the named plaintiffs Gonzalez, Billitz, and Zabihialam testified in their depositions that no personal matters were attended to while employees were clocked in. (ECF No. 104-10 at 128–29, 133–34; ECF No. 104-11 at 37–38; ECF No. 104-15 at 143.)

Furthermore, even if there is a certain amount of individual variation of the job functions among the putative class members, the fact remains that the named plaintiffs allege that American had a company-wide policy in place at one location, *i.e.*, Newark Liberty International Airport, to avoid paying its employees for all of the time that they worked. The fact that there will be individualized variations among the members of the putative class as to their reasons for working through meal breaks, for clocking in early or

11

clocking out late, or for working off the clock, should not defeat the certification of this action as a class action. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1041–48 (2016); (affirming the district court's certification of a class action, even though the employees at issue held different jobs at the same facility run by the defendant employer, because the issue of whether all employees, who were subject to the same timekeeping systems, were being unlawfully deprived of compensation for the time they spent putting on the different kinds of required protective work gear predominated); *see also Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 196–98 (D.N.J., 2014) (granting a motion to certify a class action on behalf of employees at a casino operated by the defendant employer, all of whom were allegedly required to attend mandatory training and information sessions run by management before their schedules shifts without being paid for their time in attendance, even though the defendant argued that all employees were not required to attend such meetings); *cf. Rogers v. Ocean Cable Gp. Inc.*, No. 10-4198, 2011 WL 6887154, at *4 (D.N.J. Dec. 29, 2011) (denying class certification in an action concerning the compensation paid to the technicians employed by the defendant cable television company for hours worked beyond their scheduled shifts, as the autonomous nature of the technicians' work at different locations each day was not conducive to a showing of predominance); *Moeck v. Gray Supply Corp.*, No. 03-1950, 2006 WL 42368, at *5 (D.N.J. Jan. 6, 2006) (denying a motion to certify a class action concerning installers of gas lines, as different policies concerning compensation for work that was performed by these employees beyond their scheduled shifts were in place at different locations that were run by the defendant

employer). Furthermore, the fact that the damages will vary among the putative class members, *i.e.*, different amounts of wages allegedly owed based on different reasons for the alleged underpayment, does not merit a denial of class certification. *See Clark*, 298 F.R.D. at 200 (holding that even though the amount of compensation owed to the class members, who were employees of the defendant's casino, may differ, the class was allegedly "impacted uniformly" by the defendant's failure to pay for the time spent in training and information sessions before shifts were scheduled to begin).

American directs the Court's attention to *Angeles v. US Airways, Inc.*, No. 12-5860, 2017 WL 587658 (N.D. Cal. Feb. 13, 2017), wherein a district court in the Northern District of California found that a class action brought on behalf of employees of the defendant airline for uncompensated work could not proceed, due to the individual variations among employees. (*See* ECF No. 105 at 8 (arguing that the holding in *Angeles* "denied class treatment").) However, that case is distinguishable from the instant action. First, that opinion granted a motion to *decertify* a class action. *See id.* at *4. In other words, the *Angeles* court initially saw fit to certify an action that concerned claims that were similar to the claims raised in the instant action as a class action (*see* Order Granting Certification, *Angeles v. US Airways, Inc.*, N.D. Cal. No. 12-5860, ECF No. 75 (Apr. 4, 2014)), and later chose to undo that certification only after the parties had conducted discovery. Unlike the action at issue in the *Angeles* opinion, the instant action is still in its preliminary stages.

Second, the instant case concerns one duty station, *i.e.*, Newark Liberty International Airport, whereas the *Angeles* matter concerned the airline's alleged failure to properly

compensate its employees at *all* of the airports that it served in the *entire* state of California. *See Angeles*, 2017 WL 587658, at *2–3 (addressing variations in employee conduct at airports located in Ontario, San Jose, San Francisco, San Diego, and Los Angeles). That a district court would find the commonality and predominance elements to be defeated in that situation is not surprising. *See, e.g., Wal-Mart v. Dukes*, 564 U.S. 338, 359–60 (2011) (reversing the certification of a class action concerning the defendant employer's alleged failure to compensate and promote women employees across the entire United States, because the putative class members held a multitude of jobs and were subject to a variety of regional policies, and because the defendant's local managers had varying levels of discretion in paying and promoting their employees). It is far easier to find that the predominance element has been met in the instant case, as only one duty station is being examined.

## IV. Adequacy of representation

Rule 23(a)(4) requires that "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Under this element, the Court must determine: (1) whether counsel is qualified to represent the class; and (2) whether there are conflicts of interest between the named plaintiffs and the putative class members who they seek to represent. *See Warfarin Sodium*, 391 F.3d at 532.

The aforementioned requirements have been met in this action. First, the Court notes that the plaintiffs' attorneys are more than adequate representatives for the purposes of serving as class counsel. This is clear based on the personal and law firm resumes

submitted in support of the motion for certification. (*See* ECF No. 104-3 at 1; ECF No. 104-4 at 1-3.) Furthermore, the plaintiffs' attorneys have demonstrated their diligent and competent representation throughout this action as it has proceeded so far. Additionally, the named plaintiffs are appropriate class representatives, as they have no interests that would be antagonistic to the interests of the putative class members, and they have expressed their willingness to represent the putative class members. (*See* ECF No. 104-1 at 35-36.)

American argues that some of the named plaintiffs occasionally acted as crew chiefs, and that they had the ability to approve compensation for employees for hours worked outside of the scheduled shifts when acting in that capacity, and thus they cannot adequately represent the interests of the putative class members. (*See* ECF No. 105 at 25.) However, those named plaintiffs allege that they were discouraged by American's management from approving such overtime requests when functioning as crew chiefs, and that they were still subject to American's alleged underpayment scheme when acting as crew chiefs because they were paid by the hour. (ECF No. 110 at 9.) Therefore, based on all of the foregoing, the Court finds that the adequacy requirement of Rule 23 is satisfied.

## V.     Superiority

To be certified as a class action pursuant to Rule 23(b)(3), the putative class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *Prudential Ins. Co.*, 148 F.3d at 316. In doing so, the Court must consider:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see also Prudential Ins. Co.*, 148 F.3d at 315 n.56 (reiterating the same).

The Court concludes that permitting this action to proceed as a class action would be superior to other available avenues of adjudication. First, the putative class members would have little interest in maintaining individual control over their claims, as the recoverable amounts will be unlikely to exceed 10% of the wages of those employees for a given workweek. (ECF No. 104-1 at 42.) For that same reason, it would be unlikely that the individual putative class members would have the resources to litigate on their own, partly because the cost of doing the same would be far more than the amount of recovery for each putative class member. Second, there is no argument made here that there are similar civil actions that have already been brought by American employees working at Newark Liberty International Airport. Third, the Court finds that it would be best if the claims of the putative class members were addressed in the same proceeding in the same court, in order to provide consistent adjudication of these claims and to provide straightforward guidelines for American to follow in the future if the plaintiffs and class members ultimately succeed here. Fourth, the Court foresees no difficulty in managing this class action, as American's records should reveal the names of putative class members and the hours that they were clocked in for work.

American argues that the named plaintiffs and all of the putative class members are represented by unions, and that they have access to grievance procedures that would be superior to litigation. (*See* ECF No. 105 at 33.) The Court disagrees with that argument, in that conducting 200 separate grievance procedures, *i.e.*, one per putative class member, does not seem to be a superior alternative to one streamlined class action. Furthermore, the Court notes that American provides no support in case law or otherwise for this argument. Thus, the Court finds that a class action is a superior method of adjudicating the controversy here.

## VI.  Ascertainability

The Court finds that the class has been defined with reference to objective criteria, as detailed above. For example, the subclasses will include hourly-paid employees who allegedly were not compensated for all of the time that they actually worked for American at Newark Liberty International Airport. In addition, the Court has no doubt that American's payroll records will be a reliable source to be used in determining whether putative class members fall within the definitions of the three subclasses, as the time period at issue is limited to the period between 2014 and the present. Notably, it is uncontested that American's timekeeping records reflect when employees clock in and clock out each day, and thus it should be a straightforward task to determine the number of hours that employees actually worked and the unpaid compensation they may be owed as a result. Thus, the Court concludes that the ascertainability element for certification of a class action has been met here.

# SUMMARY JUDGMENT

## I. Legal standard

It is not necessary for the Court to restate the standard for resolving a motion for summary judgment that is made pursuant to Rule 56, because that standard has been already enunciated. *See* Fed. R. Civ. P. 56(a) (providing for an award of summary judgment if there is no genuine dispute of material fact and the movant is entitled to judgment as matter of law); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (setting forth the summary judgment standard); *United States ex rel. Kosenke v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009) (setting forth the summary judgment standard).

## II. Argument

American argues that it is entitled to summary judgment as to the claims asserted by the named plaintiff Edwin Gonzalez, as Gonzalez testified in his deposition that he was aware of the procedure for getting paid when working beyond his scheduled shifts, that he had submitted requests for overtime, and that he was indeed paid when he made such requests unless he forgot to make such requests. (*See generally* ECF No. 108-1.) Furthermore, American argues that Gonzalez was paid over $32,000 in wages for time worked outside of his regular shift schedule from January 2015 through November 2017. (*Id.* at 15.)

In contrast, Gonzalez argues that all of the examples that American submits concerning the extra payments that he received were for hours that were preapproved by those in management before he worked them, that American failed to pay him for hours

worked outside of his normal schedule that were not preapproved, and that he was discouraged from requesting to be paid for extra hours that he worked that were not preapproved. (ECF No. 114 at 6.) In fact, Gonzalez asserts he was never told about the proper procedure for requesting payment for hours worked outside of his normal shifts that were not preapproved. (*Id.* at 7-8; ECF No. 114-6 at 2.) Gonzalez also asserts that those in management were well-aware that he did work after clocking in, but before his regular shift was scheduled to begin, and that those in management did not tell him that he should request additional compensation. (ECF No. 114 at 8; ECF No. 114-6 at 3.) Further, Gonzalez asserts that he was indeed performing work if he was on the clock, and that he regularly worked through the unpaid meal periods without being compensated for that work. (ECF No. 114 at 17.)

In viewing the evidence in the light most favorable to Gonzalez at this preliminary juncture, the Court finds the cross-motion for summary judgment to be premature, as Gonzalez's assertions concerning American's alleged failure to fairly compensate him is sufficient to raise a genuine issue of fact in response to American's arguments. Therefore, American's cross-motion for summary judgment is denied. However, the Court denies that cross-motion without prejudice to American to move again for summary judgment when appropriate, *i.e.*, at the conclusion of discovery in this action.

## CONCLUSION

The plaintiffs' motion to certify this action as a class action is granted. American's cross-motion for summary judgment as to Gonzalez's claims is denied without prejudice. An appropriate order will be entered separately.

_____
**JOSE L. LINARES**
Chief Judge, United States District Court

Dated: ~~February~~ March 5th, 2018